1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CHANDRA TARA AGANS,                      No.  2:20-cv-00508 AC

12                   Plaintiff,

13          v.                                 **ORDER**

14   ANDREW SAUL, Commissioner of Social
     Security,
15
                     Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") under

20   Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-34.[1]  For the reasons that follow,

21   plaintiff's motion for summary judgment will be GRANTED, and defendant's cross-motion for

22   summary judgment will be DENIED.  The matter will be reversed and remanded to the

23   Commissioner for further proceedings.

24   ////

25   ////

26

27   [1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
     who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New
28   York, 476 U.S. 467, 470 (1986).

                                                    1

I.  PROCEDURAL BACKGROUND

Plaintiff applied for DIB on July 5, 2017.  Administrative Record ("AR") 246-47.[2]  The disability onset date was alleged to be August 13, 2016.  Id.  The application was disapproved initially and on reconsideration.  AR 174-177 and 179-83.  On November 30, 2018, ALJ Jane Maccione presided over the hearing on plaintiff's challenge to the disapprovals.  AR 48-91 (transcript).  Plaintiff, who appeared with her counsel Richard Rodriguez, was present at the hearing.  AR 48.  Stephen Schmidt, a Vocational Expert ("VE"), also testified at the hearing.  Id.

On April 15, 2019, the ALJ found plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d).  AR 26-42 (decision), 43-47 (exhibit list).  On February 27, 2020, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-7 (decision and additional exhibit list).

Plaintiff filed this action on March 5, 2020.  ECF No. 1; see 42 U.S.C. § 405(g).  The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 7, 8.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 13 (plaintiff's summary judgment motion), 18 (Commissioner's summary judgment motion), 21 (plaintiff's reply).

II.  FACTUAL BACKGROUND

Plaintiff was born in 1971, and accordingly was, at age 46, a younger person under the regulations, when she filed her application.[3]  AR 246.  Plaintiff worked as an office manager for in the agriculture industry from August of 2004 through August of 2014.  AR 273.

III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards."  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'"  Andrews

---

[2]  The AR is electronically filed at ECF Nos. 11 to 11-9 (AR 1 to AR 625).
[3]  See 20 C.F.R. § 404.1563(c) ("younger person").

2

v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted). Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001), as amended on reh'g (Aug. 9, 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii) (DIB), 1381a (SSI).  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . . .'" <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); <u>Barnhart v. Thomas</u>, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. § 404.1520(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

<u>Id.</u> §§ 404.1520(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

<u>Id.</u> §§ 404.1520(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

<u>Id.</u> §§ 404.1520(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

<u>Id.</u> §§ 404.1520(a)(4)(v), (g).

4

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets insured status requirements of the Social Security Act on December 31, 2022.

> 2. [Step 1] The claimant has not engaged in substantial gainful activity since October 13, 2016, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

> 3. [Step 2] The claimant has the following severe impairments: postural orthostatic tachycardia syndrome (POTS); status post bilateral rotator cuff surgeries; degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; and labral tear of the right hip (20 CFR 404.1520(c)).

> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

> 5. [Residual Functional Capacity ("RFC")] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except she is limited to frequent climbing of ramps and stairs; she cannot climb ladders, ropes, ladders or scaffolds.  She has unlimited balancing, but is limited to occasional stooping, to frequent kneeling, and to occasional crouching and crawling.  She is limited to frequent reaching overhead and in all other directions, bilaterally.  She is limited to frequent operation of foot controls with her right lower extremity and to frequent operation of motor vehicles.  The claimant can tolerate no more than occasional concentrated exposure to extremes of heat and cold.  She must be protected from workplace hazards, such as unprotected heights and dangerous moving mechanical parts.  She is limited to standing in one spot for no more than five minutes at a time, but otherwise able to move about within the workstation when standing and walking; her sitting is unlimited.

> 6. [Step 4] The claimant is capable of performing past relevant work as a bookkeeper.  This work does not require the performance of

1

2

work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

3

7.   The claimant has not been under a disability, as defined in the Social Security Act, from August 13, 2016, through the date of this decision (20 CFR 404.1520(f)).

4

5

AR 32-41

6

As noted, the ALJ concluded that plaintiff was "not disabled" under Title II of the Act.

7

AR 41.

8

VI.   ANALYSIS

9

Plaintiff contends that this case should be remanded to the ALJ because (1) the ALJ failed

10

to give specific and legitimate reasons for rejecting the opinions of her treating physicians, and

11

(2) the ALJ failed to give clear and convincing reasons for rejecting plaintiff's subjective

12

testimony.  ECF No. 13.

13

**A.   The ALJ Properly Rejected the Treating Physicians' Opinions**

14

Plaintiff contends the ALJ erred by failing to give controlling weight to the opinion of

15

plaintiff's treating physicians Dr. Cyrus Buhari, D.O., Dr. Edmund Freund, M.D., and Dr. Dong

16

In Sinn, M.D.  ECF No. 13 at 8-10.  As discussed below, plaintiff applies the incorrect standard to

17

the ALJ's determination.  The court finds no legal error.

18

1.   The Medical Opinion Evidence

19

The ALJ considered the medical opinions of (1) state agency medical consultants

20

Dr. E. Trias, M.D. and Dr. A. Cepeda, and (2) treating physicians Dr. Cyrus Buhari, D.O., Dr.

21

Edmund Freund, M.D., Dr. Dong In Sinn, M.D., and Dr. Jonathan Schwartz, M.D., AR 39-41.

22

a.   Opinions of Dr. Trias and Dr. Cepeda

23

State agency physician Dr. Cepeda reviewed plaintiff's medical records and issued a

24

residual functional capacity assessment.  AR 152-54.  Dr. Cepeda limited plaintiff to 10 pounds

25

for both occasional and frequent lifting and carrying, 4 hours of standing or walking, and sitting

26

for more than 6 hours on a sustained basis in an 8-hour day.  AR 152.  Dr. Cepeda assessed

27

postural limitations, finding plaintiff could occasionally climb ladders, ropes and scaffolds, and

28

occasionally stoop, kneel, crouch and crawl.  Id.  Dr. Cepeda assessed manipulative limitations

including limited right and left overhead reaching.  Id.  The ALJ found portions of this opinion unpersuasive because the opinion that plaintiff is limited to lifting and carrying 10 pounds and standing and walking for 4 hours is not supported by, nor consistent with, the record and the plaintiff's treatment regimen.  Id.  The ALJ reasoned that the objective medical record was "benign with uncertain findings from the tilt-table tests."  AR 40.  But the ALJ found the "opinion that the claimant has manipulative limitations is consistent with the record, which revealed that the claimant has a history of a shoulder surgeries."  Id.

State agency physician Dr. Trias reviewed plaintiff's medical records on reconsideration. Dr. Trias found that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours in an 8-hour workday; and occasionally stoop, kneel, crouch and crawl.  AR 168-69.  The ALJ found the opinion of Dr. Trias, referred to as the "medical consultant on redetermination," persuasive because it is supported by, and consistent with, the record and the benign objective medical evidence, and it is consistent with plaintiff's activities of daily living, including the ability to work part-time.  AR 40 (citing AR 380-94, 398-418, 421-429, 431-504, 513-563, 581-86, 598-600, 604-612).

b.  Opinions of Dr. Buhari, Dr. Freund, and Dr. Sinn

Dr. Buhari, a cardiologist, began seeing plaintiff in 2014 with a history of heart fluttering and palpitations.  AR 415.  In 2016 she had a normal echocardiogram and was being "worked up" for postural orthostatic tachycardia syndrome ("POTS") using a tilt-table testing.  AR 405-19. Dr. Buhari described the syndrome as affecting patients to varying degrees and wrote that plaintiff was "currently working 3 days per week, patients with this disorder are often unable to work even this much."  AR 419.

Dr. Freund wrote a letter on April 20, 2017 stating that plaintiff was under his care.  AR 421.  He opined that POTS "affects patients in different capacities and variations" and, while plaintiff was currently working three days a week, "patients with this diagnosis are unable to even work this much regardless of the variations of this disorder."  AR 421.  He wrote another letter on October 10, 2017 recommending plaintiff reduce her weekly hours from 15 to 10 hours per week because of "medical conditions that make it difficult for her to concentrate and to do sedentary

7

1   work consistently." AR 580.  Dr. Freund completed a Residual Functional Capacity

2   Questionnaire and found that plaintiff could sit, stand and walk for 2 hours, for a total work

3   capacity of about 4 hours per day; lift 20 pounds rarely and 10 pounds occasionally; and perform

4   occasional postural movements.  AR 602-03.

5          Dr. Sinn, plaintiff's treating physician in the department of neurology, found the

6   plaintiff's POTS limitation included problems with "standing positions, recurrent fainting

7   episodes, exercise intolerance," sudden position changes, difficulty focusing and concentrating,

8   and fatigue.  AR 599.  He also wrote that "POTS is a heterogenous syndrome causing a wide

9   spectrum of symptoms with different severity.  It is not uncommon that patients with POTS are

10  unable to keep their jobs" and "in most cases, their actual disability is not correlated with usual

11  medical test results meaning what patients actually experience can be worse."  Id.

12         The ALJ found these opinions unpersuasive because "they are brief, conclusory, and

13  inadequately supported by the objective findings.  They did not provide explanation for their

14  assessments.  They primarily summarized the claimant's subjective complaints, diagnoses, and

15  treatment, but failed to provide medically acceptable clinical or diagnostic findings to support the

16  functional assessment."  AR 39.  While Dr. Freund provided the functional limitations, the ALJ

17  found that he "failed to provide supporting evidence for his assessment other than the claimant's

18  subjective complaints of pain and benign objective findings, which only included muscle spasms

19  and tenderness in the back."  AR 40 (citing AR 602-03).  The ALJ stated that these opinions were

20  inconsistent with the benign objective medical evidence, including the uncertain findings from the

21  table-tilt test, with plaintiff's activities of daily living, and with the routine and conservative

22  treatment regimen.  AR 40 (citing AR 398-411, 412-18, 581-86, 604-612).

23                          c.   Opinion of Dr. Schwartz

24         Dr. Schwartz conducted a consultative physical exam of plaintiff in May 2018.  AR 593-

25  97.  He diagnosed body pain with a history of fibromyalgia, degenerative joint disease,

26  degenerative disc disease, status post bilateral right shoulder surgeries, right acromioclavicular

27  joint separation, and dysautonomia with POTS.  AR 596-97.  Dr. Schwartz found that plaintiff

28  could stand and walk for 6 hours in an 8-hour workday; lift and carry 20 pounds occasionally and

8

10 pounds frequently; and stoop and reach frequently.  AR 597.  No limitation was assessed with respect to sitting and workplace environmental exposures.  Id.  The ALJ found the opinion persuasive because "it was based on the examiner's personal observation and examination of the claimant," it was supported by, and consistent with, the benign objective medical evidence, and consistent with plaintiff's activities of daily living, including the ability to work part-time.  AR 40.

> 2.  Principles Governing the ALJ's Consideration of Medical Opinion Evidence

The parties debate the standard that applies to the ALJ's weighing of medical opinions, an issue that has been impacted by regulatory amendments promulgated by the Social Security Administration ("SSA") for cases filed after March 27, 2017.  The question is whether the amended regulations invalidate the treating physician rule ("TPR") that has long governed the consideration of treating physician opinions in the Ninth Circuit.

The TPR provides that "those physicians with the most significant clinical relationship with the Plaintiff are generally entitled to more weight than those physicians with lesser relationships.  As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons.  Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted).  The 2017 regulations promulgated by the SSA eliminate the deference given to treating physicians in this and other Circuits, providing that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources" for claims filed after March 27, 2017.  20 C.F.R. § 416.920c (titled "How we consider and articulate medical opinions and prior administrative findings for claims filed on or after March 27, 2017") (hereafter "new regulation").  Plaintiff argues that the new regulation does not override prior caselaw establishing the TPR.  ECF No. 21 at 3-5.  For the reasons now explained, the court rejects this argument and finds that the new regulation displaces contrary, pre-existing caselaw.

////

Regulatory agencies such as the SSA have broad authority to interpret the statutes they are charged with applying, as long as their regulations are not arbitrary and capricious or contrary to the statute; courts must defer to validly adopted regulatory interpretations.[4]  Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837 (1984); Barnhart v. Walton, 535 U.S. 212, 222 (2002) (granting Chevron deference to SSA interpretation of duration requirement for disability benefits.)

It is a corollary of the Chevron doctrine that, because agencies and not judges are experts in the field, a prior judicial construction of a statute will supersede an agency's contrary interpretation only in very narrow circumstances.  Chevron, 467 U.S. at 865.  The Supreme Court has held that "prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."  Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs., 545 U.S. 967, 982 (2005).

The Ninth Circuit's prior construction of the Social Security Act, recognizing the TPR, was not derived from the unambiguous terms of the statute.  Indeed, there is no such unambiguous statutory language—the statute does not address the weight to be given to any type of medical opinion evidence.  The TPR evolved with the Court's own interpretation of the overarching statutory provision that courts can only overturn a decision if it is unsupported by substantial evidence.  See 41 U.S.C. § 405(g).  In 1975, the Ninth Circuit held that agency adjudicators had to articulate "clear and convincing reasons" for rejecting the "uncontradicted" opinion of a treating doctor, implying a deference to treating sources.  Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975).  Neither Day nor other early TPR cases cited statutory language mandating such deference.  Rather, like other federal Courts of Appeals, the Ninth Circuit concluded that a decision which ignores evidence provided by a treating physician cannot be supported by substantial evidence.  See Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983).

////

---

[4]  Plaintiff does not argue here that the 2017 regulation is arbitrary or capricious, or that its promulgation was otherwise invalid.

After several other circuits adopted their own versions of the TPR as a rule for weighing medical evidence, the Ninth Circuit followed suit.  In 1983, our Circuit agreed with the Fifth, Sixth and Second Circuits' practice of giving greater weight to the opinions of treating physicians because of their "greater opportunity to observe and know that patient as an individual."  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).  As the Supreme Court succinctly explained, "[t]he treating physician rule . . . was originally developed by Courts of Appeals as a means to control disability determinations by administrative law judges under the Social Security Act."  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 829 (2003).

"In 1991, the Commissioner of Social Security adopted regulations approving and formalizing use of the rule in the Social Security disability program."  Id.  In promulgating the SSA rules of 1991, the agency noted that "[n]one of the circuit courts of appeals has held that its treating physician rule is required by the Act or Constitution."  Final Rules, Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 (1991).  The 2017 regulations at issue here changed the Agency's approach.  The Agency is free to make such changes, despite extant caselaw, where the judicial interpretations were not themselves compelled by the statutory language.  See Brand X, supra, 545 U.S. at 982.

The Ninth Circuit has recognized that the Social Security Administration may, by regulation, override the court's own prior interpretations of the Act.  In Lambert v. Saul, 980 F.3d 1266 (9th Cir. 2020), the Court of Appeals addressed the conflict between its precedent establishing a presumption of continuing disability after a prior disability determination, and the SSA's interpretation of the 1983 Reform Act which found that no such presumption was available under the statute.  Id. at 1268.  In deferring to the agency's interpretation despite its own contrary precedent, the Lambert court noted that there are limited circumstances in which a court's own precedent is not controlling, and the court is in fact required to depart from it.  Id.  "Those circumstances include the intervening higher authority of an administrative agency's authoritative and reasonable interpretation of a statute."  Id.  Finding first that the SSA's interpretation was entitled to deference under Chevron, the Court of Appeals further concluded that "the SSA's authoritative interpretation of the Social Security Act displaces our prior precedents on the issue

11

of a presumption of continuing disability." Id. at 1275. This conclusion was compelled by Brand X, because the Ninth Circuit precedents adopting the presumption had been based on the persuasive authority of other Circuit Courts of Appeals and not on any mandatory language of the statute that foreclosed agency interpretation. Id. The TPR was likewise adopted by the Ninth Circuit based on the persuasive authority of other Circuit Courts of Appeals and not on any mandatory language of the statute that foreclosed agency interpretation. Accordingly, the undersigned concludes that the new regulations regarding the evaluation of medical opinion evidence displace the Ninth Circuit's prior precedents implementing the TPR.

Few courts have yet addressed the question whether the 2017 regulations displace the TPR, but Brand X and Lambert provide a clear path. "Only a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction." Brand X, 545 U.S. at 982-983. None of the Ninth Circuit's TPR cases constitute such a precedent. Accordingly, the agency was free to displace the judicially created rule by regulation. See Lambert, 980 F.3d at 1268, 1275. Because the TPR is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override it.

### 3.   The ALJ Permissibly Rejected the Treating Physicians' Opinions

Having established that the 2017 regulations control, the court turns to the ALJ's evaluation of Dr. Buhari, Dr. Freund, and Dr. Sinn's opinions. The ALJ found that these opinions were not consistent with the record and were not well explained or supported. AR 40. The ALJ thus addressed the two key factors identified in the 2017 regulations. 20 C.F.R. § 404.1520c(b)(2) ("Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

The ALJ acted within her authority in rejecting the treating physicians' statements about plaintiff's inability to work. The new regulations deem a statement from a medical source that a claimant is "not disabled, blind, able to work, or able to perform regular or continuing work" is "inherently neither valuable nor persuasive" because such a statement pertain to an issue reserved

to the Commissioner.  20 C.F.R. § 404.1520b(c)(3)(i).  While physicians may make medical notes in a claimant's file, statements that do not address the claimant's functional limitations need not be weighed by the ALJ.  See, e.g., Champagne v. Colvin, 582 F. App'x 696, 697 (9th Cir. 2014) (unpublished) (rejecting assertion that ALJ improperly disregarded treating physicians' opinions where providers did not opine on claimant's functional limitations and claimant "identified no additional medically necessary limitation that should have been included in the [RFC]")).  Here, , Dr. Buhari, Dr. Freund, and Dr. Sinn's medical notes generally document plaintiff's subjective complaints and state that "individuals with the claimant's condition are generally unable to work."  AR 39, 419, 421, 599.  For instance, Dr. Buhari stated that plaintiff is working 3 days per week but "patients with this disorder are often unable to work even this much."  AR 419.  Dr. Freund similarly stated that "patients with [POTS] are unable to even work this much regardless of the variations of this disorder."  AR 421.  Dr. Sinn stated that "[i]t is not uncommon that patients with POTS are unable to keep their jobs because of related symptoms affecting physical and cognitive abilities."  AR 599.  These statements are neither inherently persuasive nor valuable within the meaning of the regulations, because they do not indicate that plaintiff is unable to work or cannot "perform regular or continuing work."  See 20 C.F.R. § 404.1520b(c)(3)(i).

Further, because the doctors did not offer any explanation for these conclusions and did not list any specific limitations that pertain to plaintiff, the ALJ was not required to treat these notes as "medical opinions" for the purposes of evaluation.  AR 419, 421, 599.  Under the new regulations, medical opinions are defined in a way that excludes the statements submitted in the three letters.  A medical opinion is "a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in abilities to perform the physical and mental demands of work. 20 C.F.R. § 404.1513(a)(2).  The notes at issue here, except for Dr. Freund's residual functional capacity questionnaire, do not amount to medical opinions because the doctors did not make any independent findings regarding plaintiff's impairments or find any functional limitations.  Id.  Accordingly, the treating doctors did not provide medical opinions as described under 20 C.F.R. § 404.1513.  Even if the doctors' statements were opinions, the ALJ's analysis

comports with the new regulations, as she properly considered the supportability and consistency of Dr. Buhari, Dr. Freund, and Dr. Sinn's opinions.  AR 40.

The ALJ properly discounted the opinions because of their lack of supporting explanation for their assessments.  Supportability is one of the two important factors under the 2017 regulations.  See 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.").  All three putative opinions failed to provide a medical explanation of how POTS caused limitations for plaintiff.  AR 419, 421, 580, 599.  While Dr. Freund offered a more detailed opinion including functional limitations, the completed form relied heavily on plaintiff's subjective complaints including benign findings like complaints of tenderness.  AR 40, 602-03.  Dr. Freund's form questionnaire stands in sharp contrast with Dr. Schwartz's form and evaluation: Dr. Schwartz offered a detailed medical opinion that is supported by evidence, while Dr. Freund provided an assessment that lacks supporting evidence. Compare AR 587-97 with AR 602-03.

The ALJ also permissibly discounted the putative opinions because they were overly reliant on plaintiff's subjective complaints.  "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion.  However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion."  Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) (internal citation omitted).  As discussed above, Dr. Buhari, Dr. Freund, and Dr. Sinn's opinions were primarily based on plaintiff's reported subjective complaints and did not include clinical observations.  AR 419, 421, 580, 599.  The doctors' overreliance on plaintiff's subjective reporting is demonstrated by their failure to provide medically acceptable clinical or diagnostic findings to support their opinions or, in Dr. Freund's case, functional limitations with supporting evidence.  Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir. 2010) (noting, under the former regulations and case law, that an ALJ properly concluded that a treating source relied on

subjective complaints when no objective evidence supported his opinion).  All three doctors failed to offer any detailed examination of plaintiff such as her limitation in concentrating, sitting, standing, walking, lifting and carrying that is required of medical opinion evidence.  AR 419, 421, 580, 599, 602-03.  Accordingly, overreliance on plaintiff's subjective complaints was an appropriate basis for the ALJ to discount the doctors' opinions.

Plaintiff contends that the ALJ failed to consider the specialization or the length of the treatment relationship of the doctors.  ECF No.13 at 10.  However, the 2017 regulations do not require the ALJ to explicitly address specialization or treatment relationships; the ALJ *may* discuss the other three factors listed after supportability and consistency.  20 C.F.R. § 404.1520c(b)(2) ("The factors of supportability . . . and consistency . . . are the most important factors we consider . . . . We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.").  The ALJ properly discussed the most important factors, supportability and consistency, and was not required to consider the other factors in determining the persuasiveness of the doctors' opinions. The ALJ properly explained why she discounted the medical opinion evidence of Dr. Buhari, Dr. Freund, and Dr. Sinn by referencing the only two factors she is required to address under the  new regulations.  AR 39-40.

Plaintiff argues that the treating physician's opinions are entitled to more weight.  ECF No. 21 at 7 (citing Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)).  However, as discussed above, there is no special deference to treating sources in the new regulation.  20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.").  It was therefore proper for the ALJ not to give any special evidentiary weight to the medical opinions.

Plaintiff takes issue with the ALJ's findings that Dr. Buhari, Dr. Freund, and Dr. Sinn's opinions are "brief, conclusory, and inadequately supported by the objective findings."  Plaintiff argues this "boilerplate" statement cannot be an adequate explanation for discounting the doctors'

1    opinions.  ECF No. 21 at 7, AR 39.  Although the ALJ did use the quoted phrase, she explained in

2    subsequent paragraphs what she meant by "supportability" and "inconsistency" with the medical

3    record as a whole.  The ALJ pointed to the overreliance on plaintiff's subjective complaint and

4    inconsistency with the benign objective medical evidence in the record, plaintiff's daily activities,

5    and conservative treatment regimen.  AR 39-40.  This explanation rises beyond boilerplate and

6    satisfies the applicable regulations.

7              For all these reasons, the ALJ did not err in discounting the treating physicians' opinions.

8              **B.   The ALJ Improperly Rejected Plaintiff's Subjective Testimony**

9              Plaintiff alleges that the ALJ improperly discredited her subjective pain testimony.  "To

10   determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an

11   ALJ must engage in a two-step analysis."  Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36 (9th

12   Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical

13   evidence of an underlying impairment 'which could reasonably be expected to produce the pain

14   or other symptoms alleged.'"  Id. at 1036 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th

15   Cir. 1991)).  "Second, if the claimant meets this first test, and there is no evidence of malingering,

16   the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

17   specific, clear and convincing reasons for doing so."  Id. (citations omitted) (quotation marks

18   omitted).  Further, "[t]he ALJ may not reject subjective symptom testimony . . .  simply because

19   there is no showing that the impairment can reasonably produce the degree of symptom alleged."

20   Lingenfelter, 504 F.3d at 1035–36 (quoting Smolen, 80 F.3d at 1282); cf. Reddick v. Chater, 157

21   F.3d 715, 722 (9th Cir. 1998) ("Once the claimant produces medical evidence of an underlying

22   impairment, the Commissioner may not discredit the claimant's testimony as to the severity of

23   symptoms merely because they are unsupported by objective medical evidence." (citing Bunnell,

24   947 F.2d at 343)).  A claimant is not required to "produce 'objective medical evidence of the pain

25   or fatigue itself, or the severity thereof.'"  Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014)

26   (quoting Smolen, 80 F.3d at 1282).

27              In this case, the ALJ cited several reasons for a reduced credibility finding, which led to

28   her conclusion that plaintiff has the residual functional capacity to perform a reduced range of

                                                    16

light work.  AR 36-39.  First, the ALJ found plaintiff's daily activities were inconsistent with her

testimony of pain.  AR 38.  Second, the ALJ found plaintiff's conservative treatments were

inconsistent with the degree of her subjective complaints.  AR 38.  Third, the ALJ found there

was no evidence of muscle atrophy in the plaintiff's upper or lower extremities that is compatible

with her alleged inactivity and inability to function.  AR 38.  Fourth, the ALJ found plaintiff's

appearance and demeanor during her hearing inconsistent with her allegations of symptoms.  AR

39.  Fifth, the ALJ reasoned that plaintiff's receipt of unemployment benefits from 2017 to 2018,

which required her to certify that she was willing and able to engage in work activity, is

inconsistent with a claim of disability.  AR 39.  Finally, the ALJ found the objective medical

evidence was inconsistent with plaintiff's alleged degree of limitation.  AR 39.  Upon review of

the record, the court agrees with plaintiff that the ALJ did not properly address her subjective

testimony.

> 1.  Activities of Daily Living

The Ninth Circuit has held that "if a claimant 'is able to spend a substantial part of his day

engaged in pursuits involving the performance of physical functions that are transferable to a

work setting, a specific finding as to this fact may be sufficient to discredit a claimant's

allegations."  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (alteration in original)

(emphasis in original) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th

Cir. 1999).  However, "[o]ne does not need to be 'utterly incapacitated' in order to be

disabled."  Id. (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)) (finding that activities

such as walking in the mall and swimming are not necessarily transferable to the work setting

with regard to the impact of pain as a claimant may do these activities despite pain for therapeutic

reasons).  "[D]isability claimants should not be penalized for attempting to lead normal lives in

the face of their limitations," and "[o]nly if the level of activity were inconsistent with [the

claimant's] claimed limitations would these activities have any bearing on [the claimant's]

credibility."  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted).  The Ninth

Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily

activities are inconsistent with testimony about pain, because impairments that would

17

unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014) (citation omitted).

In this case, the ALJ indicated that plaintiff "was able to maintain her grooming and hygiene, perform household chores, cook, shop in stores, drive, work part-time, and do yard work." AR 38, citing AR 311-13, 430, 431-504, 537-63, 587-97. The ALJ further noted that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." Id.

First, the record indicates that while plaintiff did do these activities, she did so on an infrequent and limited basis. With respect to working part time, the ALJ confirmed at the hearing that plaintiff limited her work "pretty much religiously" to 15 hours a week. AR 58. Plaintiff testified that her doctor limited her to 15 hours a week, and that she had been limited to that reduced work schedule since 2015. AR 59-60. Plaintiff testified that she has continued to look for "part-time work that may be in something that I could do" – ideally something from home because she needs the flexibility to lay down and take breaks when she experiences POTS and other symptoms. AR 78. Plaintiff testified that she suffers from "brain fog" due to lack of circulation for a portion of every day and struggles with memory problems. AR 60. Plaintiff testified that fully sedentary work is difficult with her hip pain and POTS syndrome and standing in one place is difficult with her body pain. AR 311. She testified that she experiences intermittent fatigue, racing heart, and pain, and that she needs to stop and take breaks. AR 313.

Plaintiff testified that she gets exhausted when she does chores, struggles with standing in one place to cook or clean the dishes, and experiences pain after she completes her chores. AR 68. In the Exertional Questionnaire, plaintiff stated that she limits her household chores to one to two hours per week and does not clean as meticulously as she did before her impairments. AR 312. She has difficulty mowing her lawn and struggles with lifting grocery bags when she does not receive any help. Id. While she occasionally walks a few miles to help with her blood flow, she feels pain in other areas after her walks. AR 311. The record does not demonstrate a level of activity that is necessarily inconsistent with the plaintiff's claimed limitations, but rather reflects

18

her efforts to lead a normal life.

Second, the ALJ did not describe how these tasks are transferable to a work setting. When considering a claimant's pain allegations, if the ALJ finds that "despite [her] claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." Fair, 885 F.2d at 603. "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (2007) (alteration in original) (quoting Burch v. Barnhart, 400 F.3d 676, 681 (2005)). As mentioned, the ALJ failed to account for the infrequent and limited nature of plaintiff's daily activities. The ALJ did not find that plaintiff's daily activities took up a substantial part of her day or discuss how these tasks are transferable to a work setting. AR 36-39. In fact, the record demonstrates that plaintiff is unable to sustain these activities for very long or without substantial breaks. For instance, though plaintiff occasionally does chores to maintain her household, she only spends about one to two hours a week on them and needs to lay down for about 30 minutes a few times a day or take naps for about an hour a few times a week. AR 72, 73, 75, 312. She testified that she cannot sit for a period of time without continually adjusting herself to help relieve her hip pain. AR 76. Given the failure to address the minimal extent of these tasks and whether they are transferable, the ALJ's conclusion that plaintiff's daily activities contradict her allegations regarding the intensity of her pain is not supported by substantial evidence. See, e.g., Orn, 495 F.3d at 639 (holding that because "there is neither evidence to support that Orn's activities were 'transferable' to a work setting nor proof that Orn spent a 'substantial' part of his day engaged in transferable skills," the ALJ's adverse credibility determination was not supported by substantial evidence). Therefore, the court finds that substantial evidence does not support the ALJ's adverse credibility on plaintiff's activities of daily living.

2. Routine and Conservative Treatment

The ALJ asserted that "the claimant's treatment regimen was conservative, and the case

record is devoid of evidence of persistent attempts to obtain relief symptoms [*sic*], such as trying

a variety of treatments, referrals to specialists, or changing treatment sources." AR 38.  The court

is unconvinced that plaintiff's treatment history discredits her symptom testimony.

The ALJ may consider "unexplained or inadequately explained failure to seek treatment

or to follow a prescribed course of treatment" as a factor in weighing a claimant's credibility.

Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  The ALJ may infer that a claimant's

pain is not as all-disabling as reported when there is evidence of minimal and conservative

treatment.  Id.; see also Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of

'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an

impairment.").

The record shows that plaintiff was prescribed metoprolol, citalopram, atenolol, estradiol,

PREPACK cyclobenzaprine, venlafaxine, Vicodin, diazepam, diphenhydramine, Effexor, Norco,

and ibuprofen to relieve pain and that she received steroid and epidural injections.  AR 384, 399,

403, 406-07, 409, 436, 539, 543, 548, 594.  She has undergone echocardiogram, cardiac

catherization and tilt table testing and has seen a neurologist, cardiologist, and pain management

specialist.  AR 594-95.

Plaintiff contends that the level of treatment that is necessary and appropriate for

individuals diagnosed with POTS is not clear, and there was no reason for her to receive more

"aggressive" treatment, particularly since her doctors did not suggest that a different form of

treatment would benefit her.  ECF No. 21 at 8-9.  Plaintiff explained that POTS is difficult to

diagnose and that the consultative examiner, Dr. Schwartz, who examined her was not familiar

with the syndrome.  AR 371-73.  The doctors that she was referred to did not recommend any

aggressive treatment that she refused; instead she followed their recommendations regarding

exercise, medications, and injections.  AR 398-413, 537-63, 598.  Dr. Sinn explained that "POTS

is a heterogenous syndrome causing a wide spectrum of symptoms with different severity" and

"in most cases, their actual disability is not correlated with usual medical test results meaning

what patients actually experience can be worse."  AR 599.  While an "ALJ is permitted to

consider lack of treatment in h[er] credibility determination[,]" Burch v. Barnhart, 400 F.3d 676,

20

1   683 (9th Cir. 2005), Social Security Ruling 16-3P cautions ALJs to not draw negative inferences

2   from a claimant's failure to seek medical treatment if "a medical source may have advised the

3   individual that there is no further effective treatment to prescribe or recommend that would

4   benefit the individual," SSR 16-3P, 2017 WL 5180304, at *10.  Additionally, "[a] claimant

5   cannot be discredited for failing to pursue non-conservative treatment options where none exist."

6   Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (finding the ALJ erred in relying

7   on a claimant's conservative treatment where "the record does not reflect that more aggressive

8   treatment options are appropriate or available"); see also A.H. v. Comm'r of Soc. Sec., 2020 WL

9   5443243, at *8 (N.D. Cal. Sept. 10, 2020) (ALJ erred in discounting testimony due to

10  conservative treatment because "the ALJ [did] not cite to records showing that the plaintiff should

11  have pursued more aggressive treatment options.").  The ALJ does not discuss, nor is it clear from

12  the Administrative Record, what non-conservative treatment options exist for POTS syndrome.

13  The court finds that the record does not support a finding that the treatment plaintiff received for

14  her combination of impairments, including POTS, discredits her pain allegations.

15              3.  Evidence of Muscle Atrophy

16          The ALJ asserted that plaintiff did not exhibit muscular atrophy or any other evidence of

17  loss of muscle tone, bulk, mass, or strength that "is a common side effect of prolonged and/or

18  chronic pain due to lack of use of a muscle in order to avoid pain."  AR 38.  Plaintiff argues that

19  because the ALJ cites no evidence that muscle atrophy is associated with POTS, the ALJ erred in

20  considering her lack of muscle atrophy as one of the factors in assessing her level of limitation.

21  ECF No. 13 at 12.

22          According to the agency guidance, "an individual with reduced muscle strength testing

23  who indicates that for the last year pain has limited his or her standing and walking to no more

24  than a few minutes a day would be expected to have some signs of muscle wasting as a result. . . .

25  A report of minimal or negative findings or inconsistences in the objective medical evidence is

26  one of the many factors we must consider in evaluating the intensity, persistence, and limiting

27  effects of an individual's symptoms."  SSR 16-3p, 2017 WL 5180304 at *5.  Muscular atrophy

28  and muscle weakness would be signs of an inactive individual, which is how plaintiff described

herself.  See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) ("[T]he ALJ noted that Meanel did not exhibit muscular atrophy or any other physical signs of an inactive, totally incapacitated individual.").  However, the ALJ overlooked the fact that atrophy and muscle wasting are not typically associated with fibromyalgia and POTS.  Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 872 (9th Cir. 2004) ("[O]f greatest importance to disability law, [fibromyalgia's] symptoms are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia.").

The primary symptoms of POTS are lightheadedness, fainting, a rapid increase in heartbeat, chest pain, exhaustion, high/low blood pressure, nausea, blurred vision, diarrhea, forgetfulness, headaches, and many others.[5]  The medical record describes that the common symptoms include "[I]ncreased sympathetic activation and slightly decreased blood supply to the brain. Reduced perfusion to the brain can lead to dizziness, lightheadedness, brain-fogginess, and near-fainting."  AR 534.  Accordingly, because muscle atrophy is not associated with POTS and fibromyalgia, it is illogical to consider a lack of muscle atrophy as a factor in assessing the credibility of plaintiff's statements regarding her inactivity and inability to function.

Further, the ALJ herself notes multiple times that exercise was part of plaintiff's treatment plan.  AR 37, 38, 40.  Plaintiff testified that her physicians at Stanford assigned her an exercise protocol that is specific to POTS to build up the heart muscle.  AR 66.  Plaintiff testified that she must "push through" the exercise but that she does try to exercise at least three days a week. AR 67.  It is therefore unclear why the ALJ would find an absence of muscle wasting inconsistent with plaintiff's allegations of pain; it is clear from the record that although plaintiff is in pain, her specific ailments require a particular exercise protocol.

### 4.  Personal Observation

The ALJ also relied on her observations of plaintiff at the hearing to discount plaintiff's subjective symptom testimony.  Specifically, she stated that plaintiff "did not demonstrate or

---

[5]  Postural Orthostatic Tachycardia Syndrome (POTS), CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/16560-postural-orthostatic-tachycardia-syndrome-pots (last visited on March 10, 2021).

1   manifest any difficulty concentrating during the hearing."  AR 39.  She noted that plaintiff

2   "appeared to process the questions without difficulty, and to respond to the questions

3   appropriately and without delay."  Id.

4        Plaintiff contends that the ALJ improperly engaged in "sit and squirm jurisprudence"

5   when she made observations about plaintiff's demeanor during the administrative hearing.  ECF

6   No. 13 at 12-13.  She also claims that the ALJ erred by relying on her observations at the hearing

7   because the hearing lasted only for 49 minutes, which is not comparable to the sustained

8   requirements of substantial gainful activity.  Id.  Although the ALJ's observations of a plaintiff

9   may not form the sole basis for discrediting a plaintiff's subjective testimony, an ALJ may

10  properly consider her own observations at the hearing as part of the subjective testimony analysis.

11  Orn v. Astrue, 495 F.3d 625, 639-40 (9th Cir. 2007) (ALJ's personal observation may be used in

12  "the overall evaluation of the credibility of the individual's statements") (citation omitted);

13  Nyman v. Heckler, 779 F.2d 528, 531 n.1 (9th Cir. 1985) ("The ALJ's observation of [the

14  claimant]'s demeanor was relevant to his credibility and was not offered or taken as a substitute

15  for medical diagnosis.").

16        The court agrees that the ALJ's observations, while properly considered as part of an

17  overall assessment of the case, do not support the ALJ's conclusions about plaintiff's credibility.

18  AR 39.  Plaintiff's ability to process and respond to questions during a hearing that lasted less

19  than an hour is not inconsistent with plaintiff's claims regarding pain and disability in this case.

20  Plaintiff does not allege that she is unable to process information or sit for such a short period of

21  time; the ALJ's observations do not support a conclusion of reduced credibility.

22             5.  Unemployment Benefits

23        The ALJ asserted that plaintiff receiving unemployment compensation from 2017 to 2018

24  "required [her] to certify she was willing and able to engage in work activity, which is

25  inconsistent with a claim for disability."  AR 39 citing AR 256-57.  It is not clear how

26  the ALJ reached this conclusion; it may be a legal conclusion based upon the California

27  Unemployment Insurance Code, or it may be a factual conclusion based upon evidence

28  the ALJ failed to identify.  What is clear is that according to plaintiff's unemployment insurance

23

record reflected her ability to perform *part time* hours, which made her eligible for unemployment benefits.  AR 254-257.

To the extent the ALJ concluded that plaintiff's receipt of unemployment benefits necessarily means that she was willing and able to engage in full time work, that conclusion ignores plaintiff's undisputed testimony that she was able to do, at most, part time work.  If the ALJ's finding is based on an argument that plaintiff made an untruthful certification under California law, that conclusion is not supported by substantial evidence, as the ALJ does not identify any such certification in the record (nor is it clear what effect, if any, that would have on whether plaintiff was actually disabled or not).  If the decision is drawing a legal conclusion based upon the ALJ's understanding of California's unemployment insurance law, there is nothing in the decision that cites the law being interpreted or explains the conclusion.[6]

If the ALJ decision is concluding that *any* "work activity" on plaintiff's part is "inconsistent with her allegation of disability," that is a legal error.  "[W]hile receipt of unemployment benefits can undermine a claimant's alleged inability to work full-time," the record here does not establish whether plaintiff held herself out as available for full-time work.  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (2008) (citations omitted).  "Only [holding herself out for full-time work] is inconsistent with [her] disability allegations. Thus, such basis for the ALJ's credibility finding is not supported by substantial evidence."  Id.  The ALJ failed to develop the record on this point, and without further information, she cannot use plaintiff's receipt of unemployment benefits to discredit her testimony.  AR 39.

### 6.  Objective Medical Evidence

The ALJ discredits plaintiff's pain allegations partly because "pertinent objective findings only included tenderness to palpation in eight trigger points, bony protrusion of the right shoulder, mildly decreased range of motion of the lumbar spine, left upper arm paresthesia, and

---

[6]  Without purporting to rule on California law in this matter, the court notes that it appears from a cursory glance of that law, that California unemployment benefits may be available to eligible persons even if that person is only able to do part time work.  See, e.g., Cal. Unemp. Ins. Code § 1253.8 ("[a]n unemployed individual shall not be disqualified for eligibility for unemployment compensation benefits solely on the basis that he or she is only available for part-time work.")

1   tenderness in the neck," and "the findings from a tilt-test did not conclusively show evidence of

2   postural tachycardia."  AR 39 (citing AR 398-413, 421-29, 431-504, 513-32, 587-97, 604-12).

3   Plaintiff contends that the findings of Dr. Schwartz and other examinations which showed normal

4   muscle strength, gait, and mental performance, are not inconsistent with plaintiff's statement "that

5   she needed to take naps a few times a week, needed to lie down and rest, but was otherwise able

6   to engage in activities of daily living."  ECF No. 21 at 8.

7          Though a lack of medical evidence supporting plaintiff's pain allegations is a factor that

8   the ALJ can consider in her credibility analysis, Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir.

9   2005), it is insufficient without more to discredit a plaintiff's symptom testimony.  "[T]he Ninth

10  Circuit has repeatedly emphasized that, '[i]n evaluating the credibility of pain testimony after a

11  claimant produces objective medical evidence of an underlying impairment, an ALJ may not

12  reject a claimant's subjective complaints based solely on a lack of medical evidence to fully

13  corroborate the alleged severity of pain.'"  Ondracek v. Comm'r of Soc. Sec., No. 1:15-CV-

14  01308-SKO, 2017 WL 714374, at 8* (E.D. Cal. Feb. 22, 2017) (alteration in original) (quoting

15  Burch, 400 F.3d at 680); see, e.g., Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2011)

16  ("[S]ubjective pain testimony cannot be rejected on the sole ground that it is not fully

17  corroborated by objective medical evidence . . . .").  In sum, "[a]lthough the inconsistency of

18  objective findings with subjective claims may not be the sole reason for rejective subjective

19  complaints of pain, it is one factor which may be considered with others."  Salas v. Colvin, No.

20  1:13-CV-00429-BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014) (citations omitted).

21         In this case, the court has found that the ALJ's other stated rationales for rejecting

22  plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms

23  were not supported by substantial evidence.  The ALJ's rejection of plaintiff's symptom

24  testimony is thus left resting on her discussion regarding plaintiff's objective medical evidence.

25  AR 34, 36-37, 39.  While this evidence is a permissible factor, an adverse credibility

26  determination cannot rest solely on a lack of medical evidence.  See Burch, 400 F.3d at 681.

27  Accordingly, the ALJ's credibility finding based on the objective evidence is not supported by

28  substantial evidence.  This requires remand for reconsideration.

1      **C. Remand for Further Proceedings**

2          The Court has discretion to remand or reverse and award benefits.  McAllister v. Sullivan,

3   888 F.2d 599, 603 (9th Cir. 1989).  Where no useful purpose would be served by further

4   proceedings, or where the record has been fully developed, it is appropriate to exercise this

5   discretion to direct an immediate award of benefits.  See Lingenfelter, 504 F.3d at 1041; Benecke

6   v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004).  Where there are outstanding issues that must

7   be resolved before a determination can be made, and it is not clear from the record that the ALJ

8   would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is

9   appropriate.  See Benecke, 379 F.3d at 593-96.

10         In this case, there are outstanding issues that must be resolved before a final determination

11  can be made.  The undersigned agrees with plaintiff that the ALJ's error in discounting plaintiff's

12  subjective testimony is harmful and remand for further proceedings by the Commissioner is

13  necessary.  AR 13.  An error is harmful when it has some consequence on the ultimate non-

14  disability determination.  Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir.

15  2006).  The ALJ's error in this matter was harmful; plaintiff's subjective testimony, properly

16  considered, may very well result in a more restrictive residual functional capacity assessment,

17  which may in turn alter the finding of non-disability.

18         It is for the ALJ to determine in the first instance whether plaintiff has severe impairments

19  and, ultimately, whether she is disabled under the Act.  See Marsh v. Colvin, 792 F.3d 1170, 1173

20  (9th Cir. 2015) ("the decision on disability rests with the ALJ and the Commissioner of the Social

21  Security Administration in the first instance, not with a district court").  "Remand for further

22  administrative proceedings is appropriate if enhancement of the record would be useful."

23  Benecke, 379 F.3d at 593.  Here, the ALJ failed to properly consider plaintiff's subjective

24  testimony.  Further development of the record consistent with this order is necessary, and remand

25  for further proceedings is the appropriate remedy.

26                          VII.  CONCLUSION

27         For the reasons set forth above, IT IS HEREBY ORDERED that:

28         1.  Plaintiff's motion for summary judgment, ECF No. 13, is GRANTED;

                                    26

2.  The Commissioner's cross-motion for summary judgment, ECF No. 18, is DENIED;

3.  This matter is REMANDED to the Commissioner for further consideration consistent with this order; and

4.  The Clerk of the Court shall enter judgment for plaintiff, and close this case.

DATED: April 12, 2021

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

27